UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No: 8:23-cr-349-KKM-CPT

MOHAMMAD ALI HEMMAT    ///

### DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW THE DEFENDANT, Mohammad Ali Hemmat,** by and through his undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes this his Sentencing Memorandum, and respectfully says:

The final revised 10/16/24 Presentence Investigation Report will be referred to as "PSR", followed by a paragraph's number.

**Summary of Defendant's Request**

The Defendant moves for a downward variance from 30 to 25 years and imposing no more than a 35-year prison sentence; anything higher would be greater than necessary to achieve the goals and purposes of sentencing and would result in an unreasonable sentence.

If this court denies the downward variance, Defendant moves for imposition of no more than a 40-year prison sentence; anything higher would be greater than necessary to achieve the goals and purposes of sentencing and would result in an unreasonable sentence.

1

The Defendant objects to the Government's intent to ask for a life sentence. The Defendant argues a life sentence would be substantively unreasonable.

**The Defendant moves to be sentenced to no more than 35 years in prison**: 25-year min/man **count 2**; concurrently imposed 10-year min/man **count 1**; with a mandatorily consecutively imposed 10-year min/man **count 5**; **counts 3, 4** downward variance of 25 years from the 30 years low end of the USSG range concurrently imposed with the 25 year min/man in **count 2** (*and if a downward variance of 25 years from the 30 years low end of the USSG range is denied, then to be sentenced to no more than 40 years in prison* (30 year low USSG range with a 25 year concurrent min/man, with the 10 year min/man consecutively imposed to the 30 year low end of the USSG range)). **The Defendant objects to the Government's request for a life sentence.**

**Government's Caselaw In support of their request for a Life Sentence as a "reasonable" sentence is inapposite**

The Government in their 10/23/24 Sentencing Memorandum seek a life sentence in the above-styled case Gov. Memo Doc.85. They present a section discussing case law precedent, arguing prior authority would approve a "reasonableness" of a life sentence, were one imposed here.

In the above-styled case, either in trial or Discovery, the Defendant is never accused of having committed any physical sexual acts, or even touching

2

physically, either the victim or the other-bad-acts UK victim, other than one brief hug when he had driven from Milwaukee to the Middle District to see the victim.

The Government writes

"The Eleventh Circuit Court of Appeals has affirmed lengthy sentences for conduct bearing resemblance to the defendant. In *United States v. Huskey*, the Eleventh Circuit affirmed a 70-year sentence for a defendant who, beginning when his daughter was six-years old and continuing for three years, engaged in anal, oral, and vaginal sex with her, also penetrating her with objects. 349 F. App'x 495, 496 (11th Cir. 2009).
*Huskey* (who scored as a criminal history category I) recorded the sexual abuse and distributed the pornography he created on the internet. *See id*.
*Huskey* is merely one example of the Eleventh Circuit rejecting reasonableness challenges to life and natural life sentences." Gov. Memo Doc.85.

*Huskey* is critically distinguished from Defendant's case, since Huskey was being sentenced for having engaged in anal, oral, and vaginal sex and object-penetration of his daughter when she was 6-9 years old, the 11th Circuit affirming finding that 70-year sentence in the face of Huskey's "reasonableness" challenge.

The Government's citation to *U.S. v. Foster*, 209 F. App'x 942 (11th Cir. 2006) is also clearly distinguished from Defendant's case, since Foster's life sentence with a criminal history category I was affirmed, but based on Foster, "who during a four-year period engaged in oral and vaginal sex with a single victim (his daughter), who was less than 12-years old when the abuse began" Gov. Memo Doc.85.

The Government's citation to *U.S. v. Sarras* for the premise that a 100-year sentence was held to be substantively reasonable is wholly distinguished from the

3

Defendant *"... where [Sarras] had several sexual encounters with a single 13- year-old girl for roughly one year and took explicit photographs of her. See 575 F.3d 1191, 1220 (11th Cir. 2009)"* Gov. Memo Doc.85. Indeed, the facts in Sarras are fundamentally distinguished from Defendant's case. The victim ("EM") in Sarras was the step-daughter of Sarras, who had been divorced from the EM's mother, but kept a bedroom in his new home for EM to have visitation with him several nights a week. When EM was about 13 years old Sarras had "…sexual intercourse and oral sex with E.M. during her visits to his Tweed residence unless she "made up an excuse" to avoid it. Sarras had sexual intercourse with E.M. more than ten times, performed oral sex on her about three times, and had her perform oral sex on him more than ten times." *U.S. v. Sarras*, 575 F.3d 1191, 1196 (11th Cir. 2009).

The Government's reliance on U.S. *v. Johnson*, a decision upholding "as reasonable a 140–year sentence"… "where Johnson the defendant, with a criminal history category of I, abused and photographed three boys—Victim 1, from 8–15 years old, Victim 2, from 14–16 years old, and Victim 3, from 13–14 years old.", Gov. Memo Doc.85, is absolutely distinguished from Defendant Hemmat's case, where:

"…Victim 1 stated that he met Johnson when he was about 7 years old and that the two began engaging in sexual activity when the victim was 8. The sexual activity continued for about six years and the incidents were "too many to count." Victim 1 reported that when he was about 9 years old, Johnson introduced him to two other adult men for sexual purposes. Victim 1 said he was given drugs by one or more of the men to induce him into having sex. Investigators determined that Johnson had

4

taken an explicit photograph of Victim 1 with the men." *U.S. v. Johnson*, 451 F.3d 1239, 1241 (11th Cir. 2006) (emphasis added), (the Court denied Johnson's cruel and unusual punishment, 8th Amendment challenge since the District Court sentenced Johnson within the statutory limits; the Court also denied Johnson's challenge to the sentence as unreasonable based on allegedly being "greater than necessary to serve the purposes listed in 18 U.S.C. § 3553(a)" *Johnson* at 1244).

The Government's citation to *U.S. v. Kapordelis*, 569 F.3d 1291, 1318-1319 (11th Cir. 2009) is misplaced too. The Government argues *Kapordelis* supportive of the "reasonableness" of their request for a life sentence in Defendant's case. They write that *Kapordelis* upheld "as reasonable a 420-month sentence, which represented an upward variance, where defendant engaged in a pattern over many years of molesting young teenaged boys and taking photographs of them" Gov. Memo Doc.85. An American anesthesiologist in Georgia, USA, Dr. Kapordelis was accused of traveling the world, having sex with young juvenile males, and taking sexually explicit photos of the victimized boys as souvenir tokens, *Korpordelis* at 1299. In March 2004, ICE learned that three Russian juvenile boys were molested by Kapordelis in Russia, culminating in ICE filing a Complaint and obtaining a Warrant accusing Kapordelis of Sexual Tourism under 18 USC s.2423, *Id*. The original Indictment charged Korpodelis with two counts of Sexual Tourism, Id. at 1300. Evidence was presented against Korpordelis of his physically having sex with the boys internationally who would ultimately become part of the sexually illegal imagery comprising Korpordelis' ultimate convictions:

5

"In another text file, Kapordelis described how he spent three days in Prague with a 16–year–old boy named Peter having oral and anal sex. In yet another text file, Kapordelis wrote more introspectively about his sexual interest in boys: "Why am I attracted to young guys? Why does my relationship have to be a controlling one? Why is it difficult for me to enjoy a young guy sexually unless I am in total control?"… At the bar, Williams observed Kapordelis appear to negotiate with a pimp for a "kid," whom Kapordelis took back to Kapordelis's apartment. Kapordelis later informed Williams that the person was 14 years old." *Id.* at 1302.

*The Government's reliance on US v. Worsham*, 479 F. App'x 200 (11th Cir. 2012) is also misplaced. The Government writes about *Worsham* "affirming life sentence for enticing a minor to engage in sexual activity, where the facts alleged defendant communicated with an undercover agent posing online as a "bad mom" and defendant drove 100 miles to meet the fictious minor" Gov. Memo. Doc.85. 42-year-old Worsham explicitly "described the sexual acts he wanted to perform on "Steph"" (whom Worsham was made to believe was merely 7 years old) "and how he would entice her to reciprocate: by having her act out scenes from a pornographic video he would show her. For instance, Worsham wrote: "I want mom straddling baby's face so that juice drips in her little mouth."" *Worsham* at 202. In sum, had the 7-year-old and her horrific mother not been an undercover police fiction, Worsham was prepared and had travelled to sexually rape a 7 year old with the active participation of her mother.

Finally, the Government's citation to *U.S. v. Hutchinson*, 588 F. App'x 894 (11th Cir. 2014) is inapposite here. They write about *Hutchinson*,

6

"Defendant's sentence of life imprisonment for two counts of sexual exploitation of children, two counts of enticement of minors to engage in criminal sexual activity, and transferring obscene materials to minors, which was the sentencing guidelines sentence, was not substantively unreasonable in light of the statutory sentencing factors." Gov. Memo Doc.85.

The 27-year-old Hutchinson coerced the sexual rape of children and the preservation of same to be sent to him by way of videos and/or photos over the internet,

"…a mother contacted the police upon finding photographs of her fifteen-year-old daughter performing oral sex on her thirteen-year-old son. According to the daughter, a man threatened to hurt her and her family if she did not send him photographs of herself engaging in the sexual activity with her brother… Backed by the threat of exposure and harm to the victims or their families, Hutchinson ordered the victims to engage in sexual conduct, including inserting objects into their genitals and engaging in oral and vaginal intercourse. At least three times, Hutchinson coerced older sisters to engage in oral intercourse with their younger brothers while streaming video of the activity to Hutchinson over the Internet." *Hutchinson* at 895-896.

Further distinguishing Hutchinson from Defendant, was Hutchinson himself raping "…four of the victims in this case. One girl was eleven, two were thirteen, and one was sixteen." *Id*. at 897.

**Sufficient but not greater than necessary, 18 USC s.3553(a)**

Due Process applies at Sentencing, *U.S. v. Beaulieu*, 900 F.2d 1537, 1540 (10th Cir. 1990); U.S.Const.Amend.V. "Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard." *Gall v. U.S*, 552

7

U.S. 38, 51 (2007). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id*. "'The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record.'" *Id*. quoting Brief for Federal Public and Community Defenders et al. as *Amici Curiae* 16. "'"The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court."'" *Id.* at 51-52 quoting *Rita v. U.S*, 551 U.S. 338, 357-358 (2007). "Moreover, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do."" Id. at 52, quoting *Koon v. U.S*, 518 U.S. 81, 98 (1996).

Courts ought to impose sentences that "are not greater than necessary" to comply with the need for the sentence imposed (18 USC s.3553(a) and (a)(2)). The Courts when determining the particular sentence to be impose ought to consider the 7 factors and/or policy statements outlined in 18 USC s.3553(a)(1)-(7):

**(a) Factors To Be Considered in Imposing a Sentence.—** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes

8

set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;

**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

**(i)** issued by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

**(ii)** that, except as provided in section 3742 (g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994 (a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994 (a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994 (p) of title 28); and

**(B)** that, except as provided in section 3742 (g), is in effect on the date the defendant is sentenced. [1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the purposes of sentencing reflected in s.3553's sentencing factors and incorporated commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficiently necessary, will be "unreasonable" and "unfair". *U.S. v. Fernandez*, 436 F.Supp. 2d 983 (E.D. Wis. 2006).

The Sentencing Court ought to properly calculate the guidelines range, "as part of its consideration of the factors in s.3553(a)(1)-(7) in determining whether the sentence is "reasonable"". *Federal Sentencing Guidelines Handbook, Text and Analysis*, 2019-2020 Edition, Roger W. Haines, Jr, Frank O. Bowman, III, Jennifer C. Woll, Thomson Reuters/West Publishing ("*Handbook*") at 61, fn9, citing *U.S. v. Crawford*, 407 F.3d 1174 (11th Cir. 2005) (*Booker* did not alter review of the application of the sentencing guidelines). The guidelines range is one of the sentencing factors that the statute lists to be consulted, s.3553(a)(4) "**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— "

"This was reaffirmed by a 2010 amendment to s.1B1.1 which requires courts to follow a three-step approach, in which the court first computes the guideline range and then considers whether to depart from the guidelines before determining whether a *Booker* "variance" is appropriate." *Handbook* at 61.

Sentencing Courts cannot presume a guideline sentence is reasonable. *Handbook* at 63 citing *Nelson v. U.S*, 555 U.S. 350 (2009) (reiterating, after *Rita*, that district courts may not presume a guideline sentence reasonable) (*Rita v. U.S*, 551 U.S. 338 (2007)). Although District Courts cannot presume a within guidelines sentence reasonable, *Rita* allows each Appellate Circuit Court to decide for itself whether to so presume on appellate review, *Handbook* at 63, *Rita*. However, the 11th Circuit holds there is no presumption on appellate review that sentences within a guidelines range are "reasonable", *Handbook* at 116-117, and *U.S. v. Delva*, 922 F.3d 1228, 1257 (11th Cir. 2019) ("And while we do not presume that a sentence falling within the guidelines range is reasonable, we ordinarily expect it to be so.").

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the goals of punishment in sentencing factors and commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficient, will be "unreasonable" and "unfair". <u>U.S. v. Fernandez, 436 F.Supp. 2d 983 (E.D. Wis. 2006)</u> (According to the <u>Federal Defender</u>, infra, the Court in <u>U.S. v. Fernandez, 436 F.Supp. 2d 983 (E.D. Wis. 2006)</u> imposed a 126 months sentence because the career offender guideline range of 188-235 months, was greater than necessary to satisfy sentencing purposes, in part due to Sentencing Commission study on unfairness of

11

career offender designation, *Federal Defender*, at p.17-847. *Defending a Federal Criminal Case, 2010 Edition, Vol.II*, Federal Defenders of San Diego, Inc. ("*Federal Defender*")). The *Federal Defender* lists the following cases with the following tenets:

"*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence will probably cost taxpayers $836,000, and the defendant his life. Guidelines range for nonviolent offenders drains billions from taxpayers and keeps potentially productive members of society locked up, causing staggering "opportunity costs").

*United States v. Angelos*, 345 F. Supp. 2d 1227 (D. Utah 20040 (cost of mandatory 61-year-sentence runs to $1,265,000, money that could otherwise be spent on other law enforcement or social programs to reduce crime).

*United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993) (court noting that "the non-rehabilitation purposes of incarceration – retribution, deterrence and incapacitation – would all be more than adequately served by a far shorter sentence. Both society and the defendant will pay a dear cost for this sentence and receive very little in return."). *Federal Defender* at pp. 17-866-867.

The Defendant submits the USSG and the min/mans have already taken into account all the punishment-based goals of sentencing, which is why he is scoring a USSG 30-year low end score, and statutorily facing a 25-year min/man, a 10-year min/man, and a mandatorily imposed consecutive 10-year min/man. These USSG and statutory punishments have taken into account:

"**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
**(2)** the need for the sentence imposed—
**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
**(B)** to afford adequate deterrence to criminal conduct;

12

**(C)** to protect the public from further crimes of the defendant;"

arriving at these numbers and min/mans based on these factors having been taken into consideration. For example, we see these punishment-factors calculated into the USSG, the 25-year min/man, and the consecutive 10-year min/man.

The following was conducted by U.S. Probation based on the counts and trial resulting in convictions. The Undersigned is reviewing the allegations made at trial resulting in convictions in discussing the Defendant's sentencing dynamic before the court.

Under the USSG, Defendant begins at a BOL of a high 32 (PSR 30). A high 32 is precisely based on sexual crimes involving a minor, but since the Defendant began communication with LH (the victim in the case) while LH was still 11. LH testified she sent sexual images of herself to Defendant before she turned 12, so the already high BOL 32 is increased 4 levels to a level 36 (PSR 31). If the Defendant is found to have been guilty of using any of the alternative aggravators in USSG s.2G2.1(b)(6)(A), which is almost always an inherent feature of at least one of the counts in these types of cases that start at a BOL 32, then the now elevated-to-36 becomes an elevated-further level 38 (PSR 32). The Defendant is receiving 4 criminal history points for crimes committed when he was 19 years old (3 points PSR 43; 1 point PSR 44).

At a TOL of 38, his USSG range would have been 235[1](19.6 yr)-293(24.4 yr) (criminal history Category I), with 2 or 3 history points it would have increased to 262(21.8 yr)-327(27.3 yr) (Category II), but with the theft of Walmart when he was 19, it bumps him into the 4-6 points that is Category III: (292(24.3 yr)-365(30.4 yr)) (PSR 45, 47). **In sum, his USSG range would have been a TOL 38, with 4 history points**, resulting in Category III, for a USSG range of **292(24.3 yr)-365(30.4 yr)**.

**However, U.S. Probation is treating Defendant as a criminal history Category V**, citing USSG s.4B1.5 (PSR 48). This increase to a Category V (Category IV is normally for 7-9 history points; Category V is normally for 10-12 history points), **changes the USSG recommended range from 292(24.3 yr)-365(30.4 yr) to a recommended range of 360(30 yr)-life** (PSR 83):

"(a) In any case in which the defendant's instant offense of conviction is a covered sex crime, §4B1.1 (Career Offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction:" USSG s.4B1.5(a).
…
"(2) The criminal history category shall be the greater of: (A) the criminal history category determined under Chapter Four, Part A (Criminal History); or (B) criminal history Category V." USSG s.4B1.5(a)(1)(B)(2).

**MITIGATION AND DOWNWARD ADJUSTMENT/VARIANCE BASES**
*(the motion for no more than 35 years in prison, requesting a downward variance to 25 years from the 30 year low end USSG range, and if a variance from 30 years low end USSG range is denied, then the motion for no more than 40 years in prison, requiring no downward variance)*

---

[1] USSG ranges are in months, followed by years in parentheses.

**Defendant** (born 10/6/95) is currently **29-years-old**. According to the U.S. CIA World Factbook, **the current average age expectancy of an American Male is 78.7**. The Defendant was arrested and detained in this federal case in 2023, PSR page 2. **The Defendant has**, on average, **49.7 more years to live**.

**If the Court *grants* Defendant's motion for a downward variance** from 30 years down to 25 years, and his motion for no more than **a 35-year prison sentence**, he **will be 63 years old** when he completes his prison sentence, leaving him **only 15.7 years left to live outside of prison** (on supervised release).

**If the Court *denies* the Defendant's motion for a downward variance** from 30 years down to 25 years and his motion to be sentenced to no more than 35 years prison, then the Defendant is moving to be sentenced to no more than **40 years in prison**, which, if the Court imposes no more than 40 years in prison, the Defendant **will be 68 years old** when he completes his prison sentence, leaving him **only 10.7 years left to live outside of prison** (on supervised release).

**One reason to consider varying downward** from 30 years to 25 years is that, with the variance, this 29 year old Defendant will be 63 years old when he is released, leaving only 15.7 years to live on supervised released. **Such a sentence is substantively sufficient** to accomplish the goals of sentencing. **Without the downward variance** from 30 years to 25 years, this 29 year old Defendant will be 68 years old when he is released, leaving only 10.7 years left to live on supervised

15

release: when compared to the 35 year prison sentence with the variance, such a 40 year prison sentence without a variance will result, vis a vis the 35 year variance sentence, in a sentence greater than necessary to achieve the goals of sentencing.

**Another reason to consider varying downward** from 30 years to 25 years is the Defendant is a victim of having been sexually abused as a child,

"The defendant reported that he was the victim of sexual abuse from ages four until ten. He indicated that he was molested and raped by a male family member, who he declined to name. The defendant reported that his molester resided with his family, and that this was the first time he has ever told anyone about the abuse. He indicated that he had been living in denial about the abuse for a long time and has just recently come to terms with it and how it has affected his life. The defendant reported that the abuse sexualized him at a young age, and he became addicted to pornography and masturbation. He stated that he could not go a single day without pornography and masturbation. The defendant advised that technology made it all more accessible to him. After the abuse ended, he did not have any consensual relations until he was 19 years old." PSR 57.

**Conclusion**

The Defendant moves for a downward variance from 30 to 25 years and imposing no more than a 35-year prison sentence; anything higher would be greater than necessary to achieve the goals and purposes of sentencing and would result in an unreasonable sentence.

If this court denies the downward variance, Defendant moves for imposition of no more than a 40-year prison sentence; anything higher would be greater than necessary to achieve the goals and purposes of sentencing and would result in an unreasonable sentence.

The Defendant objects to the Government's intent to ask for a life sentence. The Defendant argues a life sentence would be substantively unreasonable.

**WHEREFORE, THE DEFENDANT, Mohammad Ali Hemmat,** by and through his undersigned counsel, prays this Honorable Court enter its order fashioning a reasonable sentence consistent with Defendant's arguments above.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished to the U.S. Attorney and all case-connected parties via Court Electronic Filing on Wednesday 10/23/24.

**Respectfully submitted,**

*/S/ Jorge Leon Chalela*

**JORGE LEON CHALELA, ESQ.**
**Jorge Leon Chalela, P.A.**
P.O. BOX 173407
Tampa, Florida 33672-0407
Office: (813) 221-5600
Cell Phone: (727) 415-4286
**E-Mail: chalelalaw@yahoo.com**
Florida Bar Number 0073245
Attorney for Defendant (retained), Mohammad Ali Hemmat